UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

———————————

In re:

JANELL A. CLINKSCALE,                          Case No. DG 10-05265
                                               Chapter 13
            Debtor.                            Hon. Scott W. Dales
_____/

In re:

BRENDA L. NICOLAI, fka BRENDA                  Case No. DG 11-00960
BAXTER,                                        Chapter 13
                                               Hon. Scott W. Dales
            Debtor.
_____/

In re:

BRANDY LYNN HIGHSMITH,                         Case No. DG 11-11541
                                               Chapter 13
            Debtor.                            Hon. Scott W. Dales
_____/

In re:

JAMES ELLIOTT ROBINSON and                     Case No. DG 12-03493
MELISSA DENISE ROBINSON, fka                   Chapter 13
MELISSA DENISE GILMAN, fka MELISSA             Hon. Scott W. Dales
DENISE BARTHOLOMEW,

            Debtors.
_____/

(CAPTIONED CONTINUED ON NEXT PAGE)

In re:

JON K. RHODES and JACQUELINE E.
RHODES,

        Debtors.
_____/

Case No. DG 12-05065
Chapter 13
Hon. Scott W. Dales

In re:

SAMUEL WILLIAM ROKA,

        Debtor.
_____/

Case No. DG 12-06996
Chapter 13
Hon. Scott W. Dales

In re:

VELERIA THERESA LAND,

        Debtor.
_____/

Case No. DG 13-01407
Chapter 13
Hon. Scott W. Dales

In re:

JENNIFER LYNN WILDBAHN, fka
JENNIFER LYNN FARRELL,

        Debtor.
_____/

Case No. DG 13-06682
Chapter 13
Hon. Scott W. Dales

In re:

GARY JAY SLOMINSKI and HOLLY ANN
SLOMINSKI,

        Debtors.
_____/

Case No. GG 12-04294
Chapter 13
Hon. John T. Gregg

(CAPTIONED CONTINUED ON NEXT PAGE)

In re:

KENNETH MARCEL PAGE and
STEPHANIE JUNE PAGE,

        Debtors.
_____/

Case No. GG 13-07428
Chapter 13
Hon. John T. Gregg

In re:

MARSHALL GORDON MCKENZIE,

        Debtor.
_____/

Case No. GG 11-11807
Chapter 13
Hon. John T. Gregg

In re:

PATRICK DAVID KIMBRELL and TUYET
BACH KIMBRELL, fka TUYET BACH VO
aka TUYET BACH VO-KIMBRELL,

        Debtors.
_____/

Case No. GG 12-04442
Chapter 13
Hon. John T. Gregg

In re:

PATRICIA DIANNE WHILDEN,

        Debtor.
_____/

Case No. GG 12-04929
Chapter 13
Hon. John T. Gregg

In re:

CHAD DAVID ANTCLIFF,

        Debtor.
_____/

Case No. GG 12-10623
Chapter 13
Hon. John T. Gregg

<u>AMENDED[1] OPINION AND ORDER</u>

PRESENT:   HONORABLE SCOTT W. DALES
           Chief United States Bankruptcy Judge

           HONORABLE JAMES W. BOYD
           United States Bankruptcy Judge

Jeffrey D. Mapes, Esq., a member of the bar of this court and the State Bar of Michigan, regularly represents individuals seeking relief under the Bankruptcy Code, including under chapter 13. In each of the above-captioned matters, he has filed an application under 11 U.S.C. § 330(a)(4), requesting approval of his firm's fees and expenses (collectively, the "Fee Petitions").[2] Brett N. Rodgers, chapter 13 trustee (the "Trustee"), has filed nearly identical objections (the "Objections") in each case, mainly targeting the request for compensation of staff time spent monitoring the cases each month, and Mr. Mapes's time spent reviewing the monitoring activity.

Because of the number of Fee Petitions and Objections and the similarity and importance of the issues raised in each, the court took the unusual step of consolidating these contested matters for argument, and conducted an *en banc* hearing in Grand Rapids, Michigan, on January 5, 2015. *See In re Ludwick*, 185 B.R. 238, 245 n.12 (Bankr. W.D. Mich. 1985) (holding that 28 U.S.C. § 154(a) gives the court authority to sit *en banc*).[3]

The court has carefully considered the Fee Petitions, the Objections, the oral and written arguments of counsel, and has conducted its own research. For the following reasons, the court will deny the Fee Petitions without prejudice.

---

[1] The court issues this Amended Opinion and Order to correct clerical errors, including the inadvertent omission of three cases from the caption. *See* Fed. R. Civ. P. 60(a) (applicable pursuant to Fed. R. Bankr. P. 9024).

[2] The court has prepared a table identifying the Fee Petitions and Objections by case number and docket number, and has attached the summary to this Amended Opinion and Order as Appendix A.

[3] Judge John T. Gregg, who has recused himself from hearing these contested matters, took no part in the hearing or decision.

## I. JURISDICTION

Pursuant to 28 U.S.C. § 1334(a), the United States District Court has jurisdiction over the above-captioned cases, and each case has been referred to the United States Bankruptcy Court pursuant to 28 U.S.C. § 157(a) and LCivR 83.2(a) (W.D. Mich.). The Fee Petitions include claims against the various bankruptcy estates, and therefore fall well within the Bankruptcy Court's authority to "hear and determine" by entry of a final order. *See* 28 U.S.C. § 157(b)(2)(B). Indeed, the Sixth Circuit and the United States Supreme Court have recently acknowledged that the authority of a Bankruptcy Court is at its height when the court considers matters affecting the allowance or disallowance of claims. *See generally Stern v. Marshall*, 131 S.Ct. 2594, 2601 (2011); *Onkyo Europe Electronics GMBH v. Global Technovations Inc. (In re Global Technovations Inc.)*, 694 F.3d 705 (6th Cir. 2012). The present matter involves no request to "augment the estate" but instead requests a share of the *res* included within each bankruptcy estate. The court has ample authority to resolve the disputes.

## II. ANALYSIS

Although attorneys who represent individual debtors in chapter 7 proceedings may only look to their clients for the payment of fees, attorneys who represent chapter 13 debtors enjoy additional rights to payment of their fees as an administrative claim, paid from estate assets. To qualify for an administrative expense, the attorney must persuade the court to award fees under § 330(a). *See* 11 U.S.C. § 503(b)(2) (administrative expenses include fees awarded under § 330(a)); *see also In re Kennedy Manufacturing*, 331 B.R. 744 (Bankr. N.D. Ohio 2005) (though fee applications by professionals may be entitled to "presumption of correctness" if sufficiently detailed, applicant bears burden of proving that fees and expenses are compensable). Under § 330(a), which primarily addresses compensation of professionals who represent the

estate, the court may award "reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section." 11 U.S.C. § 330(a)(4)(B). These additional factors include, but are not limited to, the following:

(A)   the time spent on such services;

(B)   the rates charged for such services;

(C)   whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)   whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)   with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)   whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). The Sixth Circuit has adopted the "lodestar" method of calculating fees, requiring the court to consider "a reasonable hourly rate for the particular attorney handling the case" and then multiplying that rate by the "reasonable hours worked on the case." *In re Boddy*, 950 F.2d 334, 337 (6th Cir. 1991). But, as this court and others have recently observed, the evaluation of attorney fee requests under § 330 is "more nuanced" than *Boddy's* helpful formula. *In re Acevedo*, 2014 WL 6775272 (Bankr. W.D. Mich. 2014); *In re Ulrich*, 517 B.R. 77 (Bankr. E.D. Mich. 2014). Any professional requesting compensation under § 330(a) has the burden of proving entitlement to an award. *Id.* at 80.[4]

---

[4] Unlike an ordinary claim against the estate, which is presumptively valid under Fed. R. Bankr. P. 3001(f), an administrative claim -- a claim that will be paid ahead of most other claims -- demands more judicial scrutiny before allowance.

The court notes that Mr. Mapes is "board certified" and that the Trustee has not challenged his hourly rate ($250.00) -- perhaps because the rate is presumptively reasonable under the court's Memorandum Regarding Allowance of Compensation and Reimbursement of Expenses for Court-Appointed Professionals, as amended effective October 1, 2013, (the "Fee Memorandum") at ¶ 16. Similarly, the Trustee takes no issue with the rates that Mr. Mapes charges for other attorneys and paraprofessionals in his office. The Fee Petitions, therefore, satisfy the first aspect of the lodestar analysis.

The common entries among the Fee Petitions which drew the Trustee's Objections are those such as the following, taken from the fee itemization in the case of Melissa and James Robinson:

| 11/14/2013 | November case status review | ekl | 0.2 | $220 | $44 |
| 12/3/2013 | December case status review | ekl | 0.1 | $220 | $22 |
| 12/5/2013 | Review November analyst notes | jdm | 0.1 | $250 | $25 |
| 1/3/2014 | Review December analyst notes | jdm | 0.1 | $250 | $25 |
| 1/9/2014 | January case status review | ekl | 0.1 | $220 | $22 |
| 2/12/2014 | Review analyst notes | jdm | 0.1 | $250 | $25 |

See Application for Additional Attorney Fees And/Or Costs Advanced, filed in *In re Robinson*, Case No. 12-03493 (DN 93-1). As appears from the itemization, Mr. Mapes is seeking compensation for between six and twelve minutes of a staff attorney's time (at $220.00 per hour) to prepare a "case status review," plus another six minutes of Mr. Mapes's time (at $250.00 per hour) to review his associate's review. In general, this practice adds $47.00 per month to every chapter 13 case that Mr. Mapes is handling. Over a sixty month plan, the cost of this monitoring alone would reach $2,820.00.

The Trustee objects to Mr. Mapes's practice of monitoring as unreasonably expensive, unnecessary, and not likely to benefit the debtors. As to the first point, the Trustee argues that the monthly monitoring charges, if permitted, will amount to a substantial *de facto* increase in the "no look" fee[5] prescribed in the Fee Memorandum. *See* Trustee's Brief in Support of his Objection to Application for Additional Mr. Fees and/or Recovery of Costs Advanced, at p.4 (DN 146 filed in *In re Clinkscale,* Case No. 10-05265). The court is not persuaded by the argument.

First, the argument implies that the "no look" fee is intended to cover services during the entire chapter 13 proceeding -- a flat fee from petition to discharge. Indeed, some chapter 13 practitioners do not seek compensation beyond the "no-look" amount awarded in the confirmation order. By the express terms of the Fee Memorandum, however, the "no-look" fee only covers "services rendered through confirmation." *See* Fee Memorandum at ¶ 16.[6] The monitoring charges, in contrast, generally reflect post-confirmation activity. Second, the "no look" fee is only a presumptive award, neither a ceiling nor a floor, and the Fee Memorandum is clear on this point. Were it otherwise, Paragraph 16 of the Fee Memorandum might run afoul of the lodestar analysis of *Boddy*. Whether the monitoring activity occurs before or after confirmation, the only way for attorneys to recover more than the "no-look" amount is to file itemized fee applications and persuade the court that the charges are proper. When attorneys file itemized applications, however, the "no look" feature of the Fee Memorandum no longer applies. An attorney is always free to seek recovery for pre- or post-confirmation fees through itemized application. Therefore, the Trustee's concern about the impact of monthly monitoring charges on the no-look fee is overstated.

---

[5] The so-called "no look" fee ranges from $2,600.00 (for less experienced counsel) to $3,650.00 (for attorneys, like Mr. Mapes, who are certified as specialists by the American Board of Certification). Fee Memorandum at ¶ 16.
[6] The Fee Memorandum is included as Exhibit 5 to the court's Local Bankruptcy Rules (Bankr. W.D. Mich.).

The Trustee is, however, understandably troubled by Mr. Mapes's seeking to recover for his reviewing the status report prepared by another attorney. At a minimum, this practice raises concerns about duplication of services. The court agrees with the Trustee that if one competent attorney is reviewing the status of a case, it is unreasonable to charge for review by another attorney, as Mr. Mapes has done routinely, at least without a particularized showing of necessity absent from the Fee Petitions. *See* Fee Memorandum at ¶ 7. In response to this argument, Mr. Mapes seemed to concede that the practice of charging attorney rates for the initial review and the secondary review is unreasonable. In fact, in his written responses to the Objection and again during oral argument, he proposed to reduce the rate charged for the initial review from an attorney's rate to a paralegal's rate. Nevertheless, there is no such settlement or amendment on the record, and the court regards the duplication of effort as unreasonable.

In addition to concerns about duplication, the court is also troubled about the propriety of charging attorney time to prepare the monthly status report in the first instance. Although the Fee Petitions themselves do not explain the tasks actually reflected in the "case status review," the case status worksheets that Mr. Mapes appended to his supporting briefs show that the review -- essentially an information gathering exercise -- does not require the skill of counsel and even if performed by counsel, should not be billed at counsel's rates. The "case status review" charges do not reflect appropriate staffing (or charging) decisions.

Similarly, each of the Fee Petitions includes charges for Mr. Mapes's associate to upload certificates of service or certificates of no objection to the court's CM/ECF system at the rate of $220.00 per hour.[7] As with the case status review entries, these entries do not reflect appropriate staffing decisions. Consequently, the court will not allow compensation at attorney rates for services that should, in good conscience, be performed by clerical or paralegal professionals.

---

[7] Mr. Mapes conceded during oral argument that uploading documents to the court's electronic filing system is a clerical or paralegal function.

*See In re Stover*, 439 B.R. 683 (Bankr. W.D. Mich. 2010); Fee Memorandum at ¶ 9 ("The rate charged must be commensurate with the level of skill required for a particular task...[A]ttorney rates or paralegal rates may not be charged for non-legal work, such as … preparing or filing proofs of service . . .").

Next, in regard to the overall necessity of monthly monitoring by debtors' counsel, each side asks the court to make a categorical or quasi-legislative pronouncement on the issue: Mr. Mapes says monthly monitoring is always necessary; the Trustee says, never.

In support of monitoring, Mr. Mapes contends that his ethical responsibilities as a member of the State Bar of Michigan impel monthly monitoring:

> The monthly reviews in question are a necessary part of representation because they allow Counsel to fulfill his ethical obligations under the Michigan Rules of Professional Conduct. As discussed in *Boyd v Engman*, 404 B.R. 467 (Bankr. W.D. Mi. 2009) an attorney has an ethical duty to communicate actively with his or her client and remain current on all aspects of the case. *See* Mich. Rules of Prof'l Conduct 1.4. Currently, Counsel's firm has two hundred and forty three (243) pending Chapter 13 cases. Counsel has chosen to monitor all cases monthly so that he can spot future problems, respond to client inquiries in a timely manner, and generally maintain some sense of organization in what would otherwise be an unwieldy caseload.

*See* Debtors Brief in Support of His/Her Motion to Deny Trustee's Objection to Application for Additional Fees and/or Recovery of Costs Advanced at p.3 (DN 145 filed in *In re Clinkscale*, 10-05265). At oral argument, Mr. Mapes amplified this argument, contending that prohibiting (or, more precisely, not allowing compensation for such monitoring as an administrative expense) will create a race to the bottom in terms of the quality of debtor representation. The court rejects this argument as hyperbolic, particularly given its experience that many competent attorneys among the debtors' bar do not charge for the practice.

As for the ethical rule that Mr. Mapes cites,[8] although monthly monitoring is not inconsistent with its aspirational aspect, the official commentary explains that "[a]dequacy of communication depends in part on the kind of advice or assistance involved . . . and "[w]here many routine matters are involved, a system of limited or occasional reporting may be arranged with the client." *See* M.R.P.C. 1.4, Official Comment. In other words, the degree of communication which affects the degree of monitoring, may vary from case to case, depending on the nature of the client and the matter at issue. So, for example, in a complicated chapter 13 case, or a case in which a debtor's income fluctuates wildly, his employment is erratic, or his family life is in turmoil -- all circumstances affecting a debtor's performance under a plan as proposed or confirmed -- regular monitoring activity may indeed be reasonable. However, in a case involving a debtor with a stable employment and family life, payments arriving in the Trustee's office like clockwork, and good communication from the client, monthly monitoring may be unreasonable and unnecessarily paternalistic. The Fee Petitions, even as supplemented with the pre-argument briefing and statements of counsel during the hearing, provide no basis for concluding that the monitoring entries are reasonable under the circumstances of each case. Depending upon the particular circumstances of any given case, perhaps quarterly, semi-annual, or annual monitoring would suffice.

For similar reasons, the court cannot say whether, in any particular case under review, the case status reports and reviews bestowed a benefit on any particular debtor. Certainly a debtor

---

[8] The rule provides, in full, as follows:

> (a) A lawyer shall keep a client reasonably informed about the status of a matter and comply promptly with reasonable requests for information. A lawyer shall notify the client promptly of all settlement offers, mediation evaluations, and proposed plea bargains.

> (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

M.R.P.C. 1.4.

who is unable to readily access information routinely within the reach of counsel would realize a benefit from an attorney's monitoring activity and client communication, but much of the important information is already within the client's reach: a debtor knows or should know whether he is making his payments, or whether the payments are being deducted from his paycheck. Granted, he may not know whether his employer is remitting payments, but the Trustee offers direct access to this information by debtors through his website. The court suspects that a reasonably competent debtor whose case is proceeding smoothly might resent being charged for monitoring activity if the cost of the services were imposed on him rather than his creditors. Again, the benefit to any particular debtor will depend upon the debtor's particular circumstances -- circumstances not revealed in the Fee Petitions.

The court acknowledges the Trustee's argument, that his office provides counsel with easy, electronic access to information through his website, and that Mr. Mapes and his clients should rely on the Trustee to perform the monitoring functions evidently reflected in the monitoring entries excerpted above (and similar entries throughout the other Fee Petitions):

> The Chapter 13 Trustee and/or creditors routinely keeps Debtor(s)' counsel apprised of the current developments in a Chapter 13 proceeding with mailing out six month disbursement reports, filing of a notice of intent to pay an unscheduled creditor, the mortgagee's filing of a notice of a mortgage payment change, and e-mailing pre-341 hearing case status reports and post-341 hearing and pre-confirmation case status reports. All of the tasks enunciated by Debtor(s)' counsel in its Brief in Support of his/her Motion to Deny Trustee's Objection to Application for Additional Attorney Fees and/or Recovery of Costs Advanced are tasks that reasonably could be performed as a result of one of the many pleadings or reports submitted by the Chapter 13 Trustee, as a follow-up protocol to a pleading generated by Debtor(s)' counsel itself (such as the filing of a Motion to Use Insurance Proceeds for Replacement of Collateral), or as an internal office procedure that is standard in most law firms.

*See* Trustee's Brief in Support of His Objection to Application for Additional Fees and/or Recovery of Costs Advanced, at p.3 (DN 146 filed in *In re Clinkscale*, Case No. 10-05265). In effect, the Trustee asks the court to decree that Mr. Mapes and others similarly situated should

rely upon the Trustee, and limit their reviews in response to inquiries from the Trustee or a motion to dismiss.

The Trustee's position, not unlike Mr. Mapes's defense of monitoring in all cases, is also paternalistic, as well as inconsistent with the division of responsibilities between the Trustee and debtors' counsel. Although the Trustee has a statutory duty to advise and assist each debtor,[9] and although the court commends both of our District's trustees for performing this duty with unyielding dedication and facility, the fact of the matter is that Mr. Mapes represents his clients and the Trustee does not. The court finds no fault in Mr. Mapes's proactive and independent approach to his cases, and rejects the Trustee's categorical disapproval of regular monitoring practices by Mr. Mapes and others in his position. Again, the circumstances of each case will control.

The difficulty with both approaches is that neither recognizes the case-specific requirements of the lodestar analysis and the court's function in reviewing fee petitions. The *Boddy* court's concept of the "reasonable hours worked on a case" counsels against any policy-based ruling from the court, in favor of a rule of reason dependent upon the circumstances of any particular case.

Keeping in mind that Mr. Mapes bears the burden of proving his entitlement to any administrative fee, the court reaches the following decision regarding the monitoring entries within the Fee Petitions: although monitoring activities may be reasonable in some cases, and at some intervals, Mr. Mapes has provided no case-specific information upon which the court may approve fees for this category of services. The court will not allow compensation for this activity on the present record.

---

[9] *See* 11 U.S.C. § 1302(a)(4).

### III. CONCLUSION AND ORDER

The court notes that the Fee Petitions include numerous entries other than the monitoring entries and the charges for attorney time uploading certificates and other documents which are not objectionable.  For example, many of the Fee Petitions include customary and reasonable charges for initial consultations, preparation of schedules, client meetings and similar activities which, naturally, drew no objection from the Trustee or the court.  Having carefully reviewed each of the Fee Petitions in a manner faithful to *Boddy's* lodestar analysis, the court sees no reason to postpone the award for unobjectionable entries simply because the filings also include entries which the court will not approve.

The parties have invited the court to take a "one size fits all" approach to the Fee Petitions, a tack the court properly resists.  Nevertheless, the court accepts the parties' categorical invitation in this minor respect:  Mr. Mapes shall, after consulting with the Trustee, submit separate proposed orders in each of the matters under review which will approve costs and fees for services *other than:*  (1) case status reviews and reviewing the status reports; and (2) electronic filing of certificates (of service or no objection).  If the parties cannot agree, either may request a hearing to settle the order.  In addition, the court's unwillingness to award compensation for monitoring activity as presently documented will not foreclose Mr. Mapes from filing a supplemental request in conformance with this Amended Opinion and Order, which explains specifically why the monitoring activity was necessary and beneficial to each of the debtors.

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

(1)    The Fee Petitions are GRANTED in part, and DENIED in part, without prejudice, as provided herein;

(2)     After consulting with the Trustee's office and within 21 days after entry of this Amended Opinion and Order, Mr. Mapes shall submit an order in each of the above-captioned cases allowing recovery of fees and costs, but disallowing the case monitoring and uploading charges, consistent with the court's ruling; and

(3)     Nothing in this Amended Opinion and Order shall be construed to bar Mr. Mapes from seeking compensation for case status and monitoring activities, upon an appropriate case-specific showing in a new application, consistent with the court's ruling.

IT IS FURTHER ORDERED that the Clerk shall:  (1) enter a copy of this Amended Opinion and Order in each of the above-referenced cases; and (2) serve a copy of this Amended Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Jeffrey D. Mapes, Esq., Brett N. Rodgers, Esq., chapter 13 trustee, and the United States Trustee.

Dated: 1-14-15

_____
Honorable Scott W. Dales
Chief United States Bankruptcy Judge

Dated: 1-14-15

_____
Honorable James W. Boyd
United States Bankruptcy Judge

## APPENDIX A

| Case Name | Case Number | Fee Petition Docket Number | Objection Docket Number |
|---|---|---|---|
| Janell Clinkscale | 10-05265 | 139 | 141 |
| Brenda Nicolai | 11-00960 | 66 | 69 |
| Brandy Highsmith | 11-11541 | 70 | 72 |
| James and Melissa Robinson | 12-03493 | 94 | 96 |
| Jon and Jacqueline Rhodes | 12-05065 | 45 | 49 |
| Samuel Roka | 12-06996 | 48 | 51 |
| Veleria Land | 13-01407 | 50 | 52 |
| Jennifer Wildbahn | 13-06682 | 44 | 46 |
| Gary and Holly Slominski | 12-04294 | 72 | 74 |
| Kenneth and Stephanie Page | 13-07428 | 45 | 47 |
| Marshall McKenzie | 11-11807 | 47 | 49 |
| Patrick David Kimbrell and Tuyet Bach Kimbrell | 12-04442 | 79 | 81 |
| Patricia Dianne Whilden | 12-04929 | 49 | 51 |
| Chad David Antcliff | 12-10623 | 54 | 56 |